IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALAN KEPO`OMAIKALANI MACHADO-AVILLA and DEBBIE MACHADO, | ) ) ) | CIVIL NO. 12-00170 LEK-RLP |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| THE DORIS DUKE FOUNDATION FOR ISLAMIC ART and DOES DEFENDANTS 1-4, | ) ) ) ) | |
| Defendant. | ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Defendant Doris Duke Foundation for Islamic Art's ("Defendant" or "DDFIA") Motion for Partial Summary Judgment ("Motion"), filed on November 19, 2012 [dkt. no. 82]. Plaintiffs Alan Kepoʻomaikalani Machado-Avila ("Kepoʻo") and Debbie Machado (collectively "Plaintiffs") filed their memorandum in opposition on February 24, 2013. Defendant filed its reply on March 4, 2013. This matter came on for hearing on March 18, 2013. Appearing on behalf of Defendant were Chad Love, Esq., and Barbara Kirschenbaum, Esq., and appearing on behalf of Plaintiffs were Paul Smith, Esq., Christopher Dias, Esq., and Charles Ferrara, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Defendant's Motion is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED as to whether the boat

harbor is a "swimming pool," or an "abnormally dangerous" condition, and whether Defendant had a "heightened duty" of care. The Motion is DENIED in all other respects.

## BACKGROUND

I. **Factual and Procedural Background**

    A. **Factual Background**

This is a personal injury case tragically arising from injuries to Kepoʻo sustained while diving from an eight foot jetty or causeway owned by Defendant into a shallow boat harbor, known as Cromwells. Defendant's shoreline property, known as Shangri La, is the former residence of Doris Duke and managed by Defendant as a museum. Cromwells includes a rocky beach and basin area, located at the shoreline and extending out to the sea. The mountain, or mauka, side of the basin contains an elevated causeway with a jetty extending into the sea at the ewa end of the causeway. There is an easement and public right-of-way over the causeway for access to the shoreline. [Second Amended Complaint at ¶¶ 3-6.]

On August 24, 2011, around 11:15 a.m., seventeen year old Kepoʻo and a friend, Chavez Navarro, were diving from the ewa end of the wall. Kepoʻo dove head-first into an area with a shallow sand pile, breaking his neck. Defendant contends that Kepoʻo and his friend were doing "suicide dives" or "suicides" into the basin that day, during which the diver's mid torso is

arched upward, the head enters the water first, and the posterior last.  The diver has to quickly extend his arms and legs the instant he or she enters the water in order to stop from hitting the bottom.  Kepo'o had been to Cromwells fifteen to twenty times before the day of the accident, and each time did a "suicide dive" ten to twenty times.

As a result of the injuries sustained, Kepo'o was rendered a quadriplegic requiring lifetime care, and Plaintiffs allege these injuries were the result of negligence and other wrongdoing by Defendant.  His mother, Debbie, alleges that she has suffered severe emotional distress and mental anguish due to her son's injuries and has had to stop working to care for him on a daily basis.

    B.    **Procedural Background**

On February 17, 2012, Plaintiffs filed their original Complaint in state court, and Defendant removed the action to this court on March 28, 2012.  On July 24, 2012, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint.  On September 7, 2012, the magistrate judge denied the motion in part on the ground that some claims were "futile," including Plaintiffs' allegations that (1) Defendant should have erected "fencing" around the ocean swimming basin pursuant to state law regarding swimming pools; and (2) Defendant failed to comply with or follow the federal pool and spa safety laws, including drain

3

regulations set forth at 15 U.S.C. § 8001, et seq.  [9/7/12 Order (dkt. no. 62), at 13.]

Plaintiffs' Second Amended Complaint alleges that Defendant breached its duties of care, and was willfully or grossly negligent because it, inter alia: maintained an unreasonably hazardous or dangerous condition; failed to post warning signs and depth markers; failed to provide a lifeguard; failed to erect a fence, or prevent jumping at the ewa end of the basin.  [Second Amended Complaint at ¶ 10.]  Plaintiffs seek compensatory and punitive damages.

**II.  Motion for Partial Summary Judgment**

Defendant moves for partial summary judgment with respect to the following claims or defenses:

> 1. That the boat harbor or boat basin in question is not a "swimming pool" or "pool" and any laws, ordinances, regulations, practices, or standards relating to "swimming pools" or "pools" are not applicable in this case.
> 
> 2. That Defendant had no duty or obligation to erect a fence, wall or barrier of any type to block, stop, hinder, delay, or prevent daredevil dives, "suicide dives," other dives, jumps, or other entries into the ocean at any part of the shoreline or boat basin in question.
> 
> 3. That under the easement in the 1938 Exchange Deed, Defendant had no duty to provide a safe place for teenagers or anyone else to dive, jump, or "suicide" into the ocean.
> 
> 4. That Defendant did not have an "enhanced duty of care" or "heightened duty of care" with regard to the boat basin, the shoreline, or any part of areas in question.

4

> 5. That the legal cause of action of strict liability based upon "abnormally dangerous condition", "inherently dangerous activity", "ultra hazardous activity", "absolute nuisance" or any other theory are inapplicable to the facts of this case.

[Mot. at 2-3.]

Defendant first argues that it is entitled to summary judgment that the boat harbor is not a "swimming pool" based on the magistrate judge's previous ruling. In the 9/7/12 Order, the magistrate judge held that:

> this area was formerly a "boat basin," which is "located at the shoreline and extends into the sea," and the water levels of the basin "fluctuate or rise and fall unpredictably depending on the momentary conditions of the waves outside the basin, currents, and/or tides." Smith Decl. Ex. 1 to Mot., at ¶¶ 4, 6. See also Pope Decl. Ex. A (photograph of ocean swimming basin). Moreover, the [Haw. Admin. R. ("HAR")] chapter Plaintiffs reference specifically exempts "[b]each venues," which are defined as "swimming area[s] created by the enclosure or alteration of natural shoreline and having a beach area." Haw. Admin. R. §§ 11-10-1(5) (chapter not applicable to beach venues, 11-10-2 (defining beach venue). Here, the ocean swimming basin at issue is more akin to a "beach venue"; it is certainly not a "swimming pool."

[9/7/12 Order at 8.]

Defendants note that, notwithstanding the magistrate judge's ruling, there were existing allegations in the First Amended Complaint that referred to a swimming pool that the magistrate judge was not called to rule upon; accordingly, Defendant moves for summary judgment on those allegations

referencing a pool or "basin-pool." [Mem. in Supp. of Mot. at 15-17.]

Defendant next argues that it is entitled to summary judgment that it had no duty to erect a fence to stop jumping or diving into the ocean. It notes that, under state law, an oceanfront landowner cannot fence off the ocean or interfere with the public's access to the ocean for swimming. [Id. at 21-22.]

It also maintains that it is entitled to summary judgment that the easement in Doris Duke's 1938 Exchange Deed requires it to provide a "safe way of passage along the coast line," but does not impose any additional heightened duties. [Id. at 27 (quoting Exh. Q (1938 Exchange Deed)).] Defendant argues that it has spent substantial time and money on keeping this walkway reasonably safe for passage along the coast. [Id. at 27-31.]

According to Defendant, it is entitled to summary judgment on any strict liability claim based on an "abnormally dangerous condition" because the Defendant's activity in maintaining the boat basin at Cromwells was not reckless or dangerous, as compared to blasting dynamite or other conditions found to be abnormally dangerous. Defendant also cites cases from other jurisdictions holding that ponds, swimming pools, and water hazards are not abnormally dangerous, even where the water involved a hidden or concealed danger. [Id. at 32-38.]

6

A.  **Plaintiffs' Memorandum in Opposition**

In their opposition, Plaintiffs assert that Defendant has an ownership interest in the submerged lands and ocean floor of the Cromwells area pursuant to a 1938 Executive Order. They argue that this is distinct from a typical deed to a shoreline property, and that the cases which discuss the ownership of the sea bottom are inapposite, since in those cases, there was never a transfer of the sea bottom itself, only of the property adjacent to the sea.  [Mem. in Opp. at 11-12.]

Plaintiffs assert that genuine issues of fact exist regarding whether the servitude contained in Defendant's deed to keep the causeway safe extends to swimming and jumping at the boat basin.  [Id. at 18-22.]

Next, Plaintiffs argue that there are genuine issues of fact regarding whether the boat basin is an artificial body of water used for swimming that does not constitute a beach venue. If the basin constitutes a swimming pool, then the DDFIA would have to comply with the safety requirements governing public swimming pools.  [Id. at 23-25.]

Plaintiffs further argue that there are genuine issues of material fact regarding the abnormally dangerous conditions existing at the yacht harbor, particularly as to the ewa end. They argue that DDFIA maintained a "hidden sand bar, rock hard, obstructing safe entry into the ewa end of the boat harbor due to

an unlawful strainer." [Id. at 25.]  They cite safety expert reports that the boat basin is high risk, contains numerous hazards, and is life threatening.  Plaintiffs note that there have been three major accidents at the same site, two resulting in quadriplegic conditions.  [Id. at 25-28.]

According to Plaintiffs, Defendant owes them a duty to keep the area safe commensurate to the foreseeable risk of conditions and uses of the area, and that a higher duty of care should be imposed here.  They argue that the area constitutes a public and attractive nuisance, and that, to "permit the ongoing unregulated use will essentially enshrine the DDFIA's yacht harbor as a quadriplegia mill."  [Id. at 35.]

### B. Defendant's Reply

In its reply, Defendant first notes that Plaintiffs did not controvert several of the statements in Defendant's Concise Statement of Facts, and therefore, they are deemed admitted pursuant to Local Rule 56.1.  [Reply at 1-2.]

The bulk of the reply is devoted to Defendant's claim that it is entitled to summary judgment regarding the easement – that the deed only requires it to provide a reasonable "safe way of passage along the coast line," and no duty to provide an area for safe access into the ocean.  It argues that Plaintiffs are attempting to increase the size of the easement in order to argue that Plaintiff was standing on the easement when he dove into the

8

basin and was injured.  Defendant submits evidence of its surveyor to show that Plaintiff was not standing on the easement, but was standing on Defendant's property at the time of his last dive.  [Id. at 7-11.]  The purpose of the easement, according to Defendant, is to allow passage along the coast, and not access to the ocean.  It argues that there is no reason for the public to need to enter the ocean at the ewa end by diving into the basin because there are steps leading down to the water at the Koko Head end, and further, the ocean is about eight feet deep at mid-basin.  [Id. at 12.]

Defendant next explains that it is entitled to summary judgment that the harbor is not a swimming pool because: (1) the magistrate judge already so ruled, Plaintiffs did not appeal, and the holding is law of the case; (2) the Department of Health has stated that it is not a "swimming pool"; and (3) the facts show that it is not an "enclosure" and does not contain an "artificial body of water."  [Id. at 3.]

Defendant also argue that it is entitled to summary judgment on the fence issue because it cannot erect a wall on a beach, block the ocean or public access thereto.  It also argues that constructing a fence would increase the danger because it could encourage people to climb to the top of the fence to dive into the basin.  Here, Plaintiff apparently admitted to climbing onto the roof of the gazebo at Waikiki Walls to dive previously.

9

[Id. at 5-7.]

It argues that it is entitled to summary judgment on Plaintiffs' claim that it had a heightened duty because it is not a common carrier or innkeeper, and Plaintiffs have not controverted any of Defendant's factual assertions on the issue. [Id. at 13.] Defendant responds to Plaintiffs' claim regarding an abnormally dangerous condition by pointing to its lack of factual basis. It states that it is not enough that there are risks or that there have been some unfortunate injuries from participation in the activity or subjecting oneself to the condition. Defendant points to the Restatement's comment that the rule is applicable "only to activities that are carried out with all reasonable care and that are of such a utility that the risk involved cannot be regarded as so great or so unreasonable as to make the activity an act of negligence merely to carry on the activity." [Id. at 16 (quoting Restatement (Second) of Torts § 520, comment b).]

## **STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## DISCUSSION

**I.   Swimming Pool**

Defendant seeks summary judgment on the whether the boat harbor is a "swimming pool" or "pool" and that any laws, ordinances, regulations, practices, or standards relating to "swimming pools" or "pools" are not applicable in this case.  The Court agrees with the magistrate judge that the harbor in question is not a swimming pool.  Further, Plaintiffs did not appeal this ruling, which is law of the case.  "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."  United States v. Jingles, 682 F.3d 811, 816-17 (9th Cir. 2012) (quoting Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988)).  The Court finds that application of the law of the case doctrine is appropriate in the instant case.  See Gonzalez v. Arizona, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (explaining that a court abuses its discretion in applying this doctrine if: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial").

As explained by the magistrate judge, although the "swimming basin was man-made and used for swimming and diving, it

11

does not contain an 'artificial' body of water.  Rather, the swimming basin is situated on the ocean shoreline and is made up entirely of seawater from the open ocean." [9/7/12 Order at 7-8.]

To the extent there are existing allegations in the First or Second Amended Complaints referring to a "swimming pool" or "pool" that the magistrate judge was not called to rule upon, the Court grants Defendant summary judgment on those allegations. The boat harbor is not an "artificial" body of water, and is not fully enclosed from the ocean.  The Motion is GRANTED with respect to this issue.

## II. **Enhanced Duty of Care**

Defendant also seeks summary judgment on whether it had a "heightened duty" or "enhanced duty" to keep the area safe. The existence of such a "special duty" is a question of law. Panion v. United States, 385 F. Supp. 2d 1071, 1089 (D. Hawai'i 2005) (citing Ruf v. Honolulu Police Dep't, 89 Hawai'i 315, 320, 972 P.2d 1081, 1086 (1999)).  Plaintiffs contend that a higher duty of care should be imposed here because of the foreseeable use of the harbor, including ages of the users, and argue that a higher standard of care is owed to children and youth.

Under Hawai'i law, however, a heightened duty of care is generally only applicable where a "special relationship" exists, such as between an innkeeper and guest, or common carrier

and passenger.  Special relations may exist between the actor and the other, which impose upon the actor the duty to take affirmative precautions for the aid or protection of the other. See Restatement (Second) of Torts § 314, cmt. a.  Plaintiffs do not dispute that no such "special relationship" exists here.  Nor do Plaintiffs argue that this was a situation giving rise to a duty to aid or protect under the Restatement (Second) of Torts § 314A.  Plaintiffs provide no other legal basis for the imposition of a "heightened duty" of care as a matter of law. The Motion is GRANTED with respect to this issue.

### III. Abnormally Dangerous Activity

Defendant argues that it is entitled to summary judgment on claims relating to an "abnormally dangerous condition."  Under the Restatement (Second) of Torts § 519, strict liability for an abnormally dangerous activity applies as follows:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
>
> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.
>
> In determining whether an activity is abnormally

dangerous, the Court considers the following factors:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;

>    (b) likelihood that the harm that results from it
>    will be great;
>
>    (c) inability to eliminate the risk by the
>    exercise of reasonable care;
>
>    (d) extent to which the activity is not a matter
>    of common usage;
>
>    (e) inappropriateness of the activity to the place
>    where it is carried on; and
>
>    (f) extent to which its value to the community is
>    outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520.

Weighing these factors here, the Court concludes that the boat harbor does not present an abnormally dangerous condition or pose an abnormal danger to others. As a preliminary matter, Plaintiffs do not adequately identify an "activity" of Defendant's that is abnormally dangerous. To the extent they contend that Defendant's ownership, management, and maintenance of the boat harbor is an "abnormally dangerous condition," they have not met their burden. Moreover, Plaintiffs do not argue that Defendant's boat harbor or associated activity is unusual in the community. It is a far cry from dynamite blasting in a residential neighborhood, as was the case in <ins>Beckstrom v. Hawaiian Dredging Co.</ins>, 42 Haw. 353 (Haw. Terr. 1958) (noting that strict liability "frequently has found expression where the defendant's activity is unusual in the community and the danger which it threatens to others is unusually great and will be great even though the enterprise is conducted with every possible

precaution."). Granted, having a teenager injured to the extent that he is rendered a quadriplegic is tragic and shocking, but the boat harbor and associated ocean activities themselves are not such that they would be abnormally dangerous when "carried out with all reasonable care." Restatement (Second) of Torts § 520, cmt. b.

The Motion is GRANTED with respect to Plaintiffs' claims for strict liability based upon an abnormally dangerous condition, inherently dangerous activity, or absolute nuisance.

## IV. Summary Judgment Is Denied as to All Other Issues

The Court DENIES the Motion in all other respects. Specifically, the Court finds that there are issues of fact that preclude summary judgment with respect to Defendant's obligation to provide fencing or other barriers to prevent divers from jumping into the basin, or the precise scope of Defendant's duty under the easement.

### A. Fencing or Other Barrier

Defendant argues that it is entitled to summary judgment that it had no duty to erect a fence to stop jumping or diving. It argues that it cannot legally erect a wall on a beach, or block the ocean or public access thereto, and argues that constructing a fence would increase the danger because it could encourage people to climb to the top of the fence to dive into the basin. The Court acknowledges that generally, a

15

landowner cannot block public access to the ocean under state law.  See, e.g., Haw. Rev. Stat. Ch. 205A; Haw. Rev. Stat. § 115-9.  The Court finds at present, however, that whether Defendant fulfilled its duty as a shoreline landowner is not clear based on the current record.  As Hawaiʻi appellate courts have explained "'[i]ssues of negligence are ordinarily not susceptible of summary adjudication' by the court."  Bidar v. Amfac, Inc., 66 Haw. 547, 553, 669 P.2d 154, 159 (1983) (quoting Pickering v. State, 57 Haw. 405, 407, 557 P.2d 125, 127 (1976)).  "[W]hat is reasonable and unreasonable and whether the defendant's conduct was reasonable in the circumstances are for the jury to decide."  Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 386, 742 P.2d 377, 384 (1987).[1]

Whether some measures, short of blocking all public access, would be reasonable under the circumstances is unclear.  Therefore, without deciding whether Defendant owns the submerged lands under Hawaiʻi law, the Court concludes that whether Defendant could or should have taken additional steps to secure the area, under the circumstances, is a question of fact.  The Motion is DENIED WITHOUT PREJUDICE with respect to this issue.

---

[1] The Court notes that Defendant's Motion for Summary Judgment regarding the scope of its duty as a landowner is currently before the Court, including the application of Hawaii's Recreational Use Statute, Haw. Rev. Stat. Chapter 520, and is set for hearing on April 29, 2013.  The Court makes no further ruling regarding Defendant's duty to keep the premises safe at this time.

B. **Easement**

Defendant argues that it is entitled to summary judgment that the easement in the Deed only requires it to provide a reasonable "safe way of passage along the coastline," but not to provide "safe diving" or "safe access into the ocean." The 1938 Exchange Deed provided that Duke, the original owner, was to build "a cause-way to give the citizens of the Territory a safe way of passage along the coast line," and created a "perpetual easement, for foot passage only, over, across, along and upon those two certain four-foot (4 ft.) rights-of-way, providing for the construction of a cause-way to give the citizens of the Territory of Hawaii a safe way of passage along the coast line." [Defendant's Exh. Q (1938 Exchange Deed).] Plaintiffs argue that Duke altered the shoreline and built the causeway to extend significantly into the sea in order to create an area intended for swimming bordered by the elevated walls of the causeway. They assert that limiting the easement to four feet on the mauka side of the causeway would defeat the basic purpose of the right-of-way to provide access to the shoreline; there would be no access to the shoreline if the easement was limited to four feet because Duke built the causeway wider than four feet creating a new/artificial shoreline. [Mem. in Opp. at 14-15.]

Here, it is not clear that access to the coastline is limited to the inner mauka four feet, which does not abut the ocean, or the full width of the walkway constructed by Duke. The Deed provided for the construction of the cause-way to provide a four foot right-of-way, and required that Duke keep the easements "in good order, repair and condition, so that said cause-way, <u>throughout the entire length thereof</u>, shall provide a safe passage at all times." [Exh. Q at 4 (emphasis added).] Based on the current record, the Court cannot say that Defendant has met its burden on summary judgment that the easement is limited to the mauka four feet and not the entire cause-way as built. The Court notes that Defendant may be able to prevail on this theory, especially in light of the easement's prescribed use as "for foot passage only." At present, however, the Court does not rule further on the scope of the easement. As such, and as discussed above, the Court makes no finding as to whether Defendant could have legally erected a fence in light of state coastal public access laws or easement requirements, or regarding the scope of Defendant's duty as a landowner under Haw. Rev. Stat. Chapter 520. The Motion is DENIED WITHOUT PREJUDICE as to this issue.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion for Partial Summary Judgment is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED as to whether the boat harbor is a

"swimming pool," or an "abnormally dangerous" condition, and whether Defendant had a "heightened duty" of care.  The Motion is DENIED WITHOUT PREJUDICE in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 26, 2013.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**ALAN KEPO`OMAIKALANI MACHADO-AVILA, ET AL. V. DORIS DUKE FOUNDATION FOR ISLAMIC ART; CIVIL 12-00170 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**